Exhibit 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                              :          21 MC 101 (AKH)

IN RE SEPTEMBER 11, 2001 LITIGATION    :

                              :          JURY TRIAL DEMANDED

-------------------------------------------------------------x

### FIFTH AMENDED MASTER PROPERTY COMPLAINT AGAINST AIRLINE AND SECURITY COMPANY DEFENDANTS

Plaintiffs,[1] by their respective attorneys complaining of defendants[2] herein, upon knowledge as to themselves and their own acts, upon information and belief as to all other matters, and upon the opinion of this Court in *In re September 11, 2001 Litigation*, 280 F.Supp.2d 279 (S.D.N.Y. 2003), respectfully state and allege as set forth below. Plaintiffs believe that the information and belief allegations have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

---

[1] The caption for each individual Complaint is attached as Appendix A. The counts incorporated from each individual Complaint into this Master Property Complaint Against Ground Defendants are set forth in Appendix A-1. To the extent any cause of action in any individual Complaint is not incorporated into this Fifth Amended Master Property Complaint or into the Master Property Complaint Against Ground Defendants, such causes of action shall be as set forth in the individual Complaint.

[2] The term "defendants" as used herein refers to those defendants being sued by each plaintiff, respectively, as set forth in Appendices A and B. Several plaintiffs that are a party to this master complaint do not allege fault or liability on the part of the Massachusetts Port Authority ("Massport"). Only certain complaints, as set forth in Appendix C, allege Massport's fault or liability. Therefore, any allegation containing a reference to Massport, or expressly or implicitly assigning fault or liability to Massport should not be attributed to any plaintiff other than those who assert claims against Massport as set forth in Appendix C.

{00083794.DOC;}

## COUNT I

### CLAIM FOR DAMAGES AGAINST THE AIRLINE DEFENDANTS AND THE SECURITY COMPANY DEFENDANTS BASED ON NEGLIGENCE

115.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116.    Plaintiffs suing on this Count I, and the specific defendants complained against by each of them, are set forth in Appendix C attached hereto.

117.    On and prior to September 11, 2001, and at all times pertinent hereto, the Airline Defendants and the Security Company Defendants, by and through their officers, agents, employees, servants or representatives, had an independent, joint and several, and nondelegable duty to plaintiffs to safeguard the subject aircraft; to prevent hijackers from breaching the airline and airport security systems and carrying dangerous weapons aboard the subject aircraft; to take reasonable measures to ensure the subject aircraft were safe and secure from danger; and to prevent the operation of the subject aircraft from causing injury or death to passengers and the public, or property damage to plaintiffs, such as occurred on September 11, 2001.

118.    On and prior to September 11, 2001, and at all times pertinent hereto, the Airline Defendants contracted for security services with the Security Company Defendants and others for all flights departing from the subject airports. The Airline Defendants breached the aforementioned non-delegable duties of care owed to plaintiffs through these contracts with the Security Company Defendants.

119.    On and prior to September 11, 2001, and at all times pertinent hereto, the Airline Defendants and the Security Company Defendants, by and through their respective officers, agents, employees, servants and/or representatives, also breached the aforementioned non-delegable duties

of care owed to plaintiffs by engaging in conduct that was reckless, negligent, wrongful, unlawful, careless, and/or in conscious disregard of the rights and safety of the passengers and the public, including plaintiffs and other property owners, by violating applicable rules and regulations, including Federal Aviation Regulations and industry standards, and further by creating unreasonable dangers, in that the Airlines Defendants and the Security Company Defendants:

    (a)    Failed to adequately develop, operate, maintain, supervise and control an airline and airport security system that would ensure the safety of or protect passengers and the public, including plaintiffs and other property owners, against criminal violence, air piracy and terrorism;

    (b)    Failed to adequately train, staff and equip the subject airports' airline and airport security systems;

    (c)    Failed to improve and/or heighten airline and airport security despite knowledge and prior warnings of numerous security breaches, lapses, and terrorist threats to airline security;

    (d)    Failed to properly screen and/or profile the hijackers and, consequently, allowed them aboard the subject aircraft with dangerous weapons;

    (e)    Failed to adhere to proper security procedures, including FAA and internal airline/security guidelines, and other security directives;

    (f)    Failed to properly scrutinize the hijackers' tickets and identification documents;

    (g)    Failed to properly monitor security checkpoints, x-ray machines and metal detectors;

    (h)    Failed to install state of the art security equipment and systems to prevent hijacking, and routinely failed to detect dangerous weapons in undercover investigations;

    (i)    Failed to adequately protect the subject aircraft cockpits from unauthorized entry;

    (j)    Failed to prevent the hijackers from entering the unprotected cockpits;

    (k)    Failed to implement adequate safety and security measures to prevent hijacking;

    (l)    Failed to equip the subject aircraft with secure cockpit doors and adequate locking mechanisms; and

(m)     Were otherwise negligent, and engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, willful and/or in conscious disregard of the rights and property of the plaintiffs.

120.    It was foreseeable to the Airline Defendants and the Security Company Defendants that the aforementioned breaches of duties of care owed to plaintiffs could cause the property damage, business losses, and other related losses incurred by plaintiffs due to the damage to the Properties on September 11, 2001.

121.    As a direct and proximate result of the Airline Defendants' and the Security Company Defendants' breach of the aforementioned duties of care, the Properties suffered significant damages caused by the collapse of the subject buildings necessitating significant repair, replacement, restoration and/or rehabilitation.

122.    As a direct and proximate result of the conduct of all defendants, including Airline Defendants and the Security Company Defendants, plaintiffs sustained property damage, business losses, and other related losses.  Therefore, all defendants are jointly and severally liable for damages sustained by plaintiffs, and plaintiffs are entitled to recover such damages to the extent allowed under applicable law.

## COUNT II

### CLAIM FOR DAMAGES AGAINST MASSPORT BASED ON NEGLIGENCE

123.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    Plaintiffs suing on this Count II are set forth in Appendix C attached hereto.

125.    On and prior to September 11, 2001, and at all times pertinent hereto, Massport, by and through its officers, agents, employees, servants or representatives, had an independent and nondelegable duty to plaintiffs to safeguard the subject aircraft; to prevent hijackers from breaching

the airline and airport security systems and carrying dangerous weapons aboard the subject aircraft; to take reasonable measures to ensure the subject aircraft were safe and secure from danger; and to prevent the operation of the subject aircraft from causing injury or death to passengers and the public, or property damage to plaintiffs, such as occurred on September 11, 2001.

126. On and prior to September 11, 2001, and at all times pertinent hereto, Massport contracted for security services with the Security Company Defendants and others for all flights departing from the subject airports. Massport breached the aforementioned non-delegable duties of care owed to plaintiffs through these contracts with the Security Company Defendants.

127. On and prior to September 11, 2001, and at all times pertinent hereto, Massport, by and through its officers, agents, employees, servants and/or representatives, also breached the aforementioned non-delegable duties of care owed to plaintiffs by engaging in conduct that was reckless, negligent, wrongful, unlawful, careless, and/or in conscious disregard of the rights and safety of the passengers and the public, including plaintiffs and other property owners, by violating applicable rules and regulations, including Federal Aviation Regulations and industry standards, and further by creating unreasonable dangers, in that Massport:

    (a)    Failed to adequately develop, operate, maintain, supervise and control an airline and airport security system that would ensure the safety of or protect passengers and the public, including plaintiffs and other property owners, against criminal violence, air piracy and terrorism;

    (b)    Failed to adequately train, staff and equip the subject airports' airline and airport security systems;

    (c)    Failed to improve and/or heighten airline and airport security despite knowledge and prior warnings of numerous security breaches, lapses, and terrorist threats to airline security;

    (d)    Failed to properly screen and/or profile the hijackers and, consequently, allowed them aboard the subject aircraft with dangerous weapons;

(e)    Failed to adhere to proper security procedures, including FAA and internal airline/security guidelines, and other security directives;

(f)    Failed to properly scrutinize the hijackers' tickets and identification documents;

(g)    Failed to properly monitor security checkpoints, x-ray machines and metal detectors;

(h)    Failed to install state of the art security equipment and systems to prevent hijacking, and routinely failed to detect dangerous weapons in undercover investigations;

(i)    Failed to adequately protect the subject aircraft cockpits from unauthorized entry;

(j)    Failed to prevent the hijackers from entering the unprotected cockpits;

(k)    Failed to implement adequate safety and security measures to prevent hijacking;

(l)    Failed to equip the subject aircraft with secure cockpit doors and adequate locking mechanisms; and

(m)    Were otherwise negligent, and engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, willful and/or in conscious disregard of the rights and property of the plaintiffs.

128.    It was foreseeable to Massport that the aforementioned breaches of duties of care owed to plaintiffs could cause the property damage, business losses, and other related losses incurred by plaintiffs due to the damage to the Properties on September 11, 2001.

129.    As a direct and proximate result of Massport's breach of the aforementioned duties of care, the Properties suffered significant damages caused by the collapse of the subject buildings necessitating significant repair, replacement, restoration and/or rehabilitation.

130.    As a direct and proximate result of the conduct of all defendants, including Massport, plaintiffs sustained property damage, business losses, and other related losses. Therefore, all defendants are jointly and severally liable for damages sustained by plaintiffs, and plaintiffs are entitled to recover such damages to the extent allowed under applicable law.

## COUNT III

### CLAIMS FOR DAMAGES AGAINST THE AIRLINE DEFENDANTS BASED ON NEGLIGENT HIRING, SELECTION, RETENTION AND SUPERVISION

131.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

132.    Plaintiffs suing on this Count III, and the specific defendants complained against by each of them, are set forth in Appendix C attached hereto.

133.    The Airline Defendants have a non-delegable duty to plaintiffs to provide competent and careful security of their terminal operations area and aircraft.

134.    On and prior to September 11, 2001, and at all times pertinent hereto, the Airline Defendants contracted for security services with the Security Company Defendants for all flights departing from the subject airports.

135.    The Security Company Defendants' work as security system contractors at the subject airports presents a risk of harm to persons and property on the ground unless reasonably performed.

136.    The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA audits and other independent checks on the effectiveness of their security systems.

137.    The Airline Defendants failed to exercise reasonable care in the hiring, selection, retention and supervision of competent and careful security system contractors.

138.    The Airline Defendants' failure to exercise reasonable care in the hiring, selection, retention and supervision of competent and careful security system contractors was a proximate cause of the property damage, business losses, and other related losses sustained by plaintiffs.

139.    As a direct and proximate result of the conduct of all defendants, including the Airline Defendants, plaintiffs sustained property damage, business losses, and other related losses. Therefore, all defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT IV

### CLAIMS FOR DAMAGES AGAINST MASSPORT BASED ON NEGLIGENT HIRING, SELECTION, RETENTION AND SUPERVISION

140.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

141.    Plaintiffs suing on this Count IV are set forth in Appendix C attached hereto.

142.    Massport has a non-delegable duty to plaintiffs to provide competent and careful security of their terminal operations area and aircraft.

143.    On and prior to September 11, 2001, and at all times pertinent hereto, Massport contracted for security services with the Security Company Defendants for all flights departing from the subject airports.

144.    The Security Company Defendants' work as security system contractors at the subject airports presents a risk of harm to persons and property on the ground unless reasonably performed.

145.    The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA audits and other independent checks on the effectiveness of their security systems.

146.    Massport failed to exercise reasonable care in the hiring, selection, retention and supervision of competent and careful security system contractors.

147.    Massport's failure to exercise reasonable care in the hiring, selection, retention and supervision of competent and careful security system contractors was a proximate cause of the property damage, business losses, and other related losses sustained by plaintiffs.

148.    As a direct and proximate result of the conduct of all defendants, including Massport, plaintiffs sustained property damage, business losses, and other related losses. Therefore, all defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT V

## CLAIM FOR DAMAGES BASED ON RES IPSA LOQUITUR AGAINST THE AIRLINE DEFENDANTS AND THE SECURITY COMPANY DEFENDANTS

149.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

150.    Plaintiffs suing on this Count V, and the specific defendants complained against by each of them, are set forth in Appendix C attached hereto.

151.    The Airline Defendants and the Security Company Defendants, and each of them, had exclusive management and control of the subject aircraft and subject airports' security systems, which the terrorists penetrated on September 11, 2001, and whose actions resulted in property damage, business losses, and other related losses to plaintiffs.

152.    The penetrations of the subject airports' security systems, and the resulting hijackings of the subject aircraft, as set forth above, are such that in the ordinary course of events would not have occurred if the Airline Defendants and the Security Company Defendants had exercised ordinary care in the maintenance and operation of the security systems.

design was a proximate cause of the property damage, business losses, and other related losses sustained by plaintiffs.

181.    As a direct and proximate result of the conduct of all defendants, including Boeing, defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT X

### CLAIMS FOR DAMAGES AGAINST
### DEFENDANT BOEING BASED ON NEGLIGENT DESIGN

182.    Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

183.    Plaintiffs suing on this Count X are set forth in Appendix C attached hereto.

184.    Defendant Boeing owed plaintiffs a duty of care in safely designing the subject aircraft and their component parts and systems, including secure cockpit doors and accompanying locks.

185.    Defendant Boeing breached this duty of care by, among other things, failing to design the subject aircraft cockpits, including doors and locking mechanisms, in a manner which would prevent hijackers and/or other passengers from accessing the cockpits. The subject aircraft cockpits, including doors and locking mechanisms, were insufficient to deter or prevent a hijacking.

186.    Defendant Boeing knew or should have known that the design of the subject aircraft and their component parts and systems, including but not limited to its cockpits, cockpit doors and locking mechanisms, was defective. Defendant Boeing failed to remedy this defect. In addition, Boeing knew or should have known that alternative and safer designs were available for a nominal

increase in cost, which would have prevented the terrorists from entering the cockpits on the subject aircraft.

187.   The defective design permitted the terrorists to easily gain access to the cockpits of the subject aircraft on September 11, 2001.  The defective design was a proximate cause of the property damage, business losses, and other related losses sustained by plaintiffs.

188.   Plaintiffs sustained property damage, business losses, and other related losses as a direct and proximate result of Boeing's negligent design of the subject aircraft and their component parts and systems, including but not limited to cockpits, cockpit doors and locking mechanisms.

189.   As a direct and proximate result of the conduct of all defendants, including Boeing, defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT XI

### CLAIMS FOR DAMAGES AGAINST
### DEFENDANT BOEING BASED ON BREACH OF WARRANTY

190.   Plaintiffs repeat and restate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

191.   Plaintiffs suing on this Count XI are set forth in Appendix C attached hereto.

192.   Prior to September 11, 2001, defendant Boeing expressly and/or impliedly warranted and represented that the subject aircraft, and their component parts and systems, including, but not limited to, the subject aircraft structures, airframes, and cockpit doors, were airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained and/or repaired, intended, and used.  Defendant Boeing further warranted that the subject aircraft, and their

Exhibit 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                           :
IN RE SEPTEMBER 11, 2001 LITIGATION     :     21 MC 97 (AKH)
                                                           :
-----------------------------------------------------------x

## PLAINTIFFS' AMENDED FLIGHT 175 MASTER LIABILITY COMPLAINT

### (TWO WORLD TRADE CENTER CRASH)

Plaintiffs,[1] by their respective attorneys complaining of defendants herein, upon information and belief, respectfully state as and for their common liability allegations as follows:

### BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of decedents, and the Estates of decedents for the personal injuries to and wrongful deaths of the individuals who were killed in the hijacking and crash of United Air Lines Flight 175 (hereinafter "Flight 175") into Two World Trade Center (hereinafter "Two World Trade") as well as on behalf of those who were in Two World Trade or in the vicinity thereof and were killed as a result of the fires in and collapse of Two World Trade on September 11, 2001 and its aftermath.

In sum, these actions allege that for several years prior to September 11, 2001, the defendants named herein had actual knowledge of the fact that terrorist groups and individuals associated with them had publicly proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled within or to its borders and vowed to kill Americans and to destroy American institutions and that airlines and

---

[1]     For ease of reference, a chart summarizing the litigants is attached as Appendix A.

## COUNT ONE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND AND MASSPORT BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS CONDUCT, AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

116.   Plaintiffs incorporate by reference all prior allegations in this Complaint.

117.   On and prior to September 11, 2001,  THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT, by their officers, agents, employees, servants or representatives had an independent, joint and several, nondelegable duty to safeguard Flight 175 and all other aircraft that operated at Portland Jetport and Logan Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard the aircraft or otherwise threaten the safety of passengers and crew as well as people in buildings or on the ground who might suffer death or injury as a result of a crash.

118.   The defendants were jointly and severally required to secure Flight 175 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, resulting in injuries or death to passengers and crew; and/or to operate the subject aircraft in a manner which would not result in injury or death to its passengers and crew as well as individuals in buildings or on the ground who might suffer death or injury at the hands of the terrorists or otherwise by a crash of the airplane.

- 28 -

XC -    007298

119.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT, entered into contracts for security services for all flights departing from Portland Jetport and Logan Airport. These defendants had a duty to exercise the highest degree of care to prevent individuals carrying weapons from passing through security checkpoints at Portland Jetport and Logan Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with THE SECURITY COMPANY DEFENDANTS to provide various airline and airport security services.

120.    By virtue of their negligence, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT breached their contracts to provide effective security at Portland Jetport and Logan Airport and to prevent security breaches which could cause injury or death to passengers, crew and individuals in buildings or on the ground who might suffer death or injury as a result of a deliberate crash.

121.    On September 11, 2001, hijackers penetrated said airline and airport security system at Portland Jetport and subsequently Logan Airport, brought dangerous weapons onto the Colgan aircraft and subsequently the UNITED aircraft and used said dangerous weapons to seize control of the UNITED aircraft and then crash it into Two World Trade Center injuring and killing decedents.

122.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND, and MASSPORT, by their respective officers, agents,

- 29 -

XC-    007299

employees, servants and/or representatives, breached their duty to decedents and

engaged in conduct that was reckless, negligent, negligent per se, wrongful, unlawful,

careless, and willful and wanton in conscious disregard of the rights and safety of the

decedents by violating applicable rules and regulations, including Federal Aviation

Regulations; and further by creating unreasonable dangers to decedents in that THE

AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE

SECURITY COMPANY DEFENDANTS, PORTLAND, and MASSPORT:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers and crew and persons on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence and air piracy;

- failed to adequately train, staff and equip Portland Jetport and Logan Airport's airline and airport security system;

- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

- failed to properly monitor security checkpoints, x-ray machines and metal detectors;

- failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

- 30 -

XC -    007300

- failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

- failed to prevent the hijackers from entering the unprotected cockpit;

- failed to implement adequate safety and security measures to prevent hijacking;

- failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

- defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

123.    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

124.    Plaintiffs and the Estates of decedents and the heirs and next of kin of the decedents have sustained and are entitled to recover compensatory damages allowed under law, including damages for the value of decedents' life, loss of net earnings of the decedents, loss of probable support, future contributions and pecuniary benefits, loss of services, loss of inheritance of prospective accumulations, mental anguish, emotional pain and suffering, grief and sorrow, loss of society, companionship, comfort, protection, care, attention, advice, maintenance, counsel, guidance, and decedents' pre-death conscious pain, suffering and fear of death, loss of personal property, and funeral and burial expenses, and other damages.

- 31 -

XC -    007301

## COUNT TWO

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND, AND MASSPORT BASED ON NEGLIGENT SELECTION

125.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

126.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT had an independent and non-delegable duty to provide and maintain competent and careful security of their terminal operations area and aircraft.  In recognition of that duty, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT subcontracted for security services to protect all flights departing from Portland Jetport and Logan Airport.

127.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing THE SECURITY COMPANY DEFENDANTS.

128.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT each had a duty or voluntarily undertook a duty through their contracts with THE SECURITY COMPANY DEFENDANTS to exercise the highest degree of care for the safety and security of all passengers and crew passing through security at Portland Jetport and Logan Airport.

129.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT each knew or should have known that

- 32 -

XC-    007302

the security screening systems and services at Portland Jetport and Logan Airport provided by THE SECURITY COMPANY DEFENDANTS were grossly inadequate and posed a severe danger to its aircraft, passengers, crew and the public. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT knew or should have known that the security systems at Portland Jetport and Logan Airport had been demonstrated to be like a sieve frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

130.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT knew or should have known that THE SECURITY COMPANY DEFENDANTS failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

131.    THE SECURITY COMPANY DEFENDANTS' work as security system contractors at Portland Jetport and Logan Airport presents a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

132.    THE SECURITY COMPANY DEFENDANTS had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

- 33 -

XC-    007303

133.   THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT's failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers and crew passing through Portland Jetport and Logan Airport and boarding aircraft there.

134.   THE AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT's failure to exercise reasonable care in the selection, continued retention and supervision of competent and careful security systems and contractors were proximate contributing factors to the causes of decedents injuries, death and damages.

135.   As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by plaintiffs and plaintiffs are entitled to recover such damages to the extent allowed under applicable state law.

### COUNT THREE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON STRICT TORT LIABILITY

136.   Plaintiffs incorporate by reference all prior allegations in this Complaint.

137.   The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

138.   Defendant BOEING defectively designed the cockpit or flight deck environment, including its door and accompanying locks of the subject aircraft. The design in use on September 11, 2001 in the subject aircraft was unreasonably

- 34 -

XC-    007304

dangerous in that it could easily be penetrated by a determined passenger. The cockpit door was not secure and the accompanying locks were insufficient to deter or prevent unauthorized or unlawful entry to thwart a hijacking attack. Alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from gaining access to the cockpit on Flight 175.

139.   This defective design permitted the terrorists to gain access to the cockpit of Flight 175 and hijack the aircraft. BOEING'S defective design was a proximate cause of the personal injuries to and death of decedents.

140.   As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by plaintiffs and plaintiffs are entitled to recover such damages to the extent allowed under applicable state law.

**COUNT FOUR**

**CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN**

141.   Plaintiffs incorporate by reference all prior allegations in this Complaint.

142.   Defendant BOEING owed all passengers and crew who fly on their aircraft and those persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of a BOEING aircraft, including decedents, a duty of care in safely designing the aircraft including a secure cockpit door and accompanying locks.

143.   Defendant BOEING recklessly and negligently breached this duty of care by failing to design the cockpit doors and accompanying locks to the subject aircraft in a manner which would prevent hijackers and/or other passengers from accessing the

- 35 -

XC-    007305

cockpit. The cockpit door on Flight 175 was not secure and the accompanying locks were insufficient to deter or prevent a hijacking.

144. Defendant BOEING knew or should have known that the design of its cockpit door was defective. Defendant BOEING failed to remedy this defect. Defendant BOEING knew or should have known that alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from entering the cockpit on Flight 175.

145. This defective design permitted the terrorists to easily gain access to the Flight 175 cockpit on September 11, 2001 and was a proximate cause of the injuries to and deaths of decedents.

146. As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by plaintiffs and plaintiffs are entitled to recover such damages to the extent allowed under applicable state law.

COUNT FIVE

CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL
DAMAGES AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY

147. Plaintiffs incorporate by reference all prior allegations in this Complaint.

148. Prior to September 11, 2001, defendant BOEING expressly and/or impliedly warranted and represented that the subject aircraft and its component parts and systems, including, but not limited to, the subject aircraft's structure and airframe, including the subject aircraft's cockpit door, were airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained, and/or repaired,

- 36 -

Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                  :
IN RE SEPTEMBER 11, 2001 LITIGATION    :        21 MC 97 (AKH)
                                                  :
                                                  :
------------------------------------------------------------------x

### PLAINTIFFS' FLIGHT 77 MASTER LIABILITY COMPLAINT

### (THE PENTAGON CRASH)

Plaintiffs[1], by their respective attorneys complaining of the defendants herein, upon information and belief, respectfully state as and for their common liability allegations as follows:

### BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of decedents, and the Estates of decedents for the wrongful deaths of the individuals who were killed in the hijacking and crash of American Airlines Flight 77 (hereinafter "Flight 77") into the Pentagon in Arlington, Virginia on September 11, 2001. Flight 77 originated at Dulles International Airport, Virginia (hereinafter "Dulles Airport") and was bound for Los Angeles International Airport.

In sum, these actions allege that for several years prior to September 11, 2001, American Airlines, Argenbright and the other security company defendant named herein, and the Metropolitan Washington Airports Authority had actual knowledge of the fact that terrorist groups and individuals associated with them had publically proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled

_____

[1]    The caption for each individual plaintiff and, for ease of reference, a chart summarizing the litigants is attached as Appendix A.

## CLAIMS FOR WRONGFUL DEATH AGAINST ALL DEFENDANTS
## BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS
## CONDUCT AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

28.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

29.    On and prior to September 11, 2001,  American, the Security Company Defendants and MWAA, by their officers, agents, employees, servants or representatives, had an independent, joint and several, nondelegable duty to exercise and provide the passengers of Flight 77 with the highest level of security and care to safeguard Flight 77 and all other aircraft that operated at Dulles Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard aircraft or otherwise threaten the safety of passengers and crew.

9)    The defendants were jointly and severally required to secure Flight 77 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking and to operate the subject aircraft in a manner which would not result in injury or death to its passengers.

10)    On and prior to September 11, 2001, American and MWAA entered into contracts with the Security Company Defendants for security services for all flights departing from Dulles Airport.  These defendants had a duty to exercise the highest degree of care for the safety and security of all passengers passing through security checkpoints at Dulles Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with the Security Company Defendants to provide various airline and airport security services.

11)    By virtue of their negligence, the Security Company Defendants breached their contracts to provide effective security at Dulles Airport and to prevent security breaches which could cause injury or death to passengers.

30.    On and prior to September 11, 2001, American, the Security Company Defendants, and MWAA, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard of the rights and safety of the passengers by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to Flight 77 passengers in that American, the Security Company Defendants, and MWAA:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers against acts of criminal violence and air piracy;

- failed to adequately train, staff and equip Newark Airport's airline and airport security system;

- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

· failed to properly monitor security checkpoints, x-ray machines and metal detectors;

· failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

· failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

· failed to prevent the hijackers from entering the unprotected cockpit;

· failed to implement adequate safety and security measures to prevent hijacking;

· failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

· defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

42.    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT TWO

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN AND MWAA BASED ON NEGLIGENT SELECTION

43.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

44.     American and MWAA failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing the Security Company Defendants.

45.     The Security Company Defendants' work as security system contractors at Dulles Airport presents a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

46.     American and MWAA have a non-delegable duty to the traveling public, including decedents, to provide competent and careful security of their terminal operations area and aircraft.

47.     The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

48.     American and MWAA's failure to exercise reasonable care in the selection of competent and careful security system contractors were proximate contributing factors to the causes of each decedent's injuries and damages.

49.     As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT THREE

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES
### RES IPSA LOQUITUR AGAINST ALL DEFENDANTS

Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                                   :
IN RE SEPTEMBER 11, 2001 LITIGATION            :         21 MC 97 (AKH)
                                                                   :
                                                                   :
-------------------------------------------------------------------x

## PLAINTIFFS' FLIGHT 93 MASTER LIABILITY COMPLAINT

### (THE SHANKSVILLE CRASH)

Plaintiffs,[1] by their respective attorneys complaining of the Defendants herein,

upon information and belief, respectfully state as and for their common liability

allegations as follows:

### BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of

decedents, and the Estates of decedents for the wrongful deaths of the individuals who

were killed in the hijacking and crash of United Air Lines Flight 93 (hereinafter "Flight

93") in Shanksville, Pennsylvania on September 11, 2001. Flight 93 originated at

Terminal A, Newark International Airport (hereinafter "Newark Airport") and was bound

for San Francisco International Airport.

In sum, these actions allege that for several years prior to September 11, 2001,

United Air Lines and the other airline defendants named herein, Argenbright and the

other security company defendant named herein, and the Port Authority of New York

and New Jersey had actual knowledge of the fact that terrorist groups and individuals

_____

[1]      The caption for each individual plaintiff and, for ease of reference, a chart
summarizing the litigants is attached as Appendix A.

1

Arlington, Virginia.

49.    Upon information and belief, having learned that other aircraft crashed into various national landmarks, at approximately 9:58 a.m. certain passengers on board Flight 93 attempted to re-take control of the subject aircraft to prevent the hijackers from using Flight 93 as an instrument of mass destruction.

50.    Upon information and belief, at approximately 10:05 a.m., due to the heroic efforts of the passengers to prevent the hijackers from using the subject aircraft as an instrument of mass destruction, the subject aircraft crashed in Somerset County, near Shanksville, Pennsylvania, killing all passengers and crew.

51.    As a result of the actions of the hijackers, the passengers of Flight 93 were subjected to unusual G-forces, causing physical personal injuries, as well as pre-death pain and suffering, extreme emotional distress, extreme terror, and unremitting fear of impending death based on the knowledge that the hijackers had killed or attempted to kill passengers or crew aboard Flight 93 and that other aircraft had been hijacked and crashed into the World Trade Center and Pentagon, and damage to their personal property.

52.    As a direct and proximate consequence of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT ONE

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST UNITED, THE SECURITY COMPANY DEFENDANTS AND THE

13

## PORT AUTHORITY BASED ON NEGLIGENCE; NEGLIGENCE PER SE; RECKLESS CONDUCT AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

53.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

54.    On and prior to September 11, 2001, United, the Security Company Defendants and the Port Authority, by their officers, agents, employees, servants or representatives, had an independent, joint and several, nondelegable duty to exercise and provide the passengers of Flight 93 with the highest level security and care to safeguard Flight 93 and all other aircraft that operated at Newark Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard aircraft or otherwise threaten the safety of passengers and crew.

55.    The defendants were jointly and severally required to secure Flight 93 from unreasonable dangers, such as terrorist action aboard the aircraft, including hijacking and to operate the subject aircraft in a manner which would not result in injury or death to its passengers.

56.    On and prior to September 11, 2001, United and the Port Authority entered into contracts with the Security Company Defendants for security services for all flights departing from Newark Airport.  These defendants had a duty to exercise the highest degree of care for the safety and security of all passengers passing through security checkpoints at Newark Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with the Security Company Defendants to provide various airline and airport security services.

57.    By virtue of their negligence, the Security Company Defendants breached their contracts to provide effective security at Newark Airport and to prevent security

14

breaches which could cause injury or death to passengers.

58.    On and prior to September 11, 2001, United, the Security Company Defendants, and the Port Authority, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard of the rights and safety of the passengers by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to Flight 93 passengers in that United, the Security Company Defendants, and the Port Authority:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers against acts of criminal violence and air piracy;

- failed to adequately train, staff and equip Newark Airport's airline and airport security system;
- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

- failed to properly monitor security checkpoints, x-ray machines and metal detectors;

- failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover

15

investigations;

- failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

- failed to prevent the hijackers from entering the unprotected cockpit;

- failed to implement adequate safety and security measures to prevent hijacking;

- failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

- defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

59.    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT TWO

## CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE OTHER AIRLINES DEFENDANTS BASED ON NEGLIGENCE

60.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

61.    On and prior to September 11, 2001, the Other Airline Defendants had an independent and non-delegable duty to maintain the security of their aircraft and Newark Airport.  In recognition of that duty, the Other Airline Defendants subcontracted for security services to protect all flights departing from Newark Airport.

1)    The Other Airline Defendants each had a duty or voluntarily undertook a duty through its contract with the Security Company Defendants to exercise the highest

16

degree of care for the safety and security of all passengers passing through security at Newark Airport.

2)    The Other Airline Defendants each knew or should have known that the security screening systems and services at Newark Airport provided by the Security Company Defendants were grossly inadequate and posed a severe danger to its passengers and the public.  The Other Airline Defendants knew or should have known that the security systems at Newark Airport had been demonstrated to be like a sieve frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

3)    Each of the Other Airline Defendants knew or should have known that the Security Company Defendants failed to adequately train its employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

4)    The Other Airline Defendants failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers passing through Newark Airport and boarding aircraft there.

5)    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

**COUNT THREE**

17

## CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST UNITED AND THE PORT AUTHORITY BASED ON NEGLIGENT SELECTION

6) Plaintiffs incorporate by reference all prior allegations in this Complaint.

7) United and the Port Authority failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing the Security Company Defendants.

8) The Security Company Defendants' work as security system contractors at Newark Airport presents a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

9) United and the Port Authority have a non-delegable duty to the traveling public, including decedents, to provide competent and careful security of their terminal operations area and aircraft.

10) The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

62. United and the Port Authority's failure to exercise reasonable care in the selection of competent and careful security system contractors were proximate contributing factors to the causes of each decedent's injuries and damages.

11) As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable

18

15)    Plaintiffs incorporate by reference all prior allegations in this Complaint.

16)    The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

17)    Defendant Boeing defectively designed the cockpit or flight deck environment, including its door and accompanying locks of the subject aircraft. The design in use on September 11, 2001 in the subject aircraft was unreasonably dangerous in that it could easily be penetrated by a determined passenger. The cockpit door was not secure and the accompanying locks were insufficient to deter or prevent unauthorized or unlawful entry to thwart a hijacking attack. Alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from gaining access to the cockpit on Flight 93.

18)    This defective design permitted the terrorists to gain access to the cockpit of Flight 93 and hijack the aircraft. Boeing's defective design was a proximate cause of the deaths of decedents on Flight 93.

19)    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

**COUNT SIX**

**CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES
AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN**

20)    Plaintiffs incorporate by reference all prior allegations in this Complaint.

21)    Defendant Boeing owed all passengers who fly on their aircraft and those

20

who flew on Flight 93 a duty of care in safely designing the aircraft including a secure cockpit door and accompanying locks.

22)    Defendant Boeing recklessly and negligently breached this duty of care by failing to design the cockpit doors and accompanying locks to the subject aircraft in a manner which would prevent hijackers and/or other passengers from accessing the cockpit.  The cockpit door on Flight 93 was not secure and the accompanying locks were insufficient to deter or prevent a hijacking.

23)    Defendant Boeing knew or should have known that the design of its cockpit door was defective.  Defendant Boeing failed to remedy this defect.  Defendant Boeing knew or should have known that alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from entering the cockpit on Flight 93.

24)    This defective design permitted the terrorists to easily gain access to the Flight 93 cockpit on September 11 2001 and was a proximate cause of the deaths of decedents.

25)    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT SEVEN

## CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES <u>AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY</u>

26)    Plaintiffs incorporate by reference all prior allegations in this Complaint.

Exhibit 11



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
IN RE SEPTEMBER 11, 2001 LITIGATION        :        21 MC 97 (AKH)
                                                          :
----------------------------------------------------------x

## PLAINTIFFS' AMENDED FLIGHT 11 MASTER LIABILITY COMPLAINT

### (ONE WORLD TRADE CENTER CRASH)

Plaintiffs,[1] by their respective attorneys complaining of defendants herein, upon information and belief, respectfully state as and for their common liability allegations as follows:

## BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of decedents, and the Estates of decedents for the personal injuries to and wrongful deaths of the individuals who were killed in the hijacking and crash of American Airlines Flight 11 (hereinafter "Flight 11") into One World Trade Center (hereinafter "One World Trade") as well as on behalf of those who were present in or in the vicinity of One World Trade and were killed as a result of the fires in and collapse of One World Trade on September 11, 2001 or its immediate aftermath.

In sum, these actions allege that for several years prior to September 11, 2001, the defendants named herein had actual knowledge of the fact that terrorist groups and individuals associated with them had publicly proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled within or to its borders and vowed to kill Americans and to destroy American institutions and that airlines and

---

[1]    For ease of reference, a chart summarizing the litigants is attached as Appendix A.

XC-    007223

## COUNT ONE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES, AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND AND MASSPORT BASED ON NEGLIGENCE, NEGLIGENCE PER SE; RECKLESS CONDUCT, AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

114.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

115.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT, by their officers, agents, employees, servants or representatives had an independent, joint and several, nondelegable duty to safeguard Flight 11 and all other aircraft that operated at Portland Jetport and Logan Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard the aircraft or otherwise threaten the safety of passengers and crew as well as people in buildings or on the ground who might suffer death or injury as a result of a crash.

116.    The defendants were jointly and severally required to secure Flight 11 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, resulting in injuries or death to passengers and crew; and/or to operate the subject aircraft in a manner which would not result in injury or death to its passengers and crew as well as individuals in buildings or on the ground who might suffer death or injury at the hands of the terrorists or otherwise by a crash of the airplane.

117.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY

- 28 -

XC-    007250

DEFENDANTS, PORTLAND and MASSPORT entered into contracts for security services for all flights departing from Portland Jetport and Logan Airport. These defendants had a duty to exercise the highest degree of care to prevent individuals carrying weapons from passing through security checkpoints at Portland Jetport and Logan Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with THE SECURITY COMPANY DEFENDANTS to provide various airline and airport security services.

118.    By virtue of their negligence, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT breached their contracts to provide effective security at Portland Jetport and Logan Airport and to prevent security breaches which could cause injury or death to passengers, crew and individuals in buildings or on the ground who might suffer death or injury as a result of a deliberate crash.

119.    On September 11, 2001, hijackers penetrated said airline and airport security system at Portland Jetport and subsequently Logan Airport, brought dangerous weapons onto the Colgan aircraft and subsequently the subject aircraft and used said dangerous weapons to seize control of the subject aircraft and then crash it into One World Trade Center injuring and killing decedents.

120.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct that was reckless, negligent, negligent per se, wrongful, unlawful,

- 29 -

careless, and willful and wanton in conscious disregard of the rights and safety of the decedents by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to decedents in that THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers and crew and persons on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence and air piracy;

- failed to adequately train, staff and equip Portland Jetport and Logan Airport's airline and airport security system;

- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

- failed to properly monitor security checkpoints, x-ray machines and metal detectors;

- failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

- failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

- 30 -

X C -    007252

- failed to prevent the hijackers from entering the unprotected cockpit;

- failed to implement adequate safety and security measures to prevent hijacking;

- failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

- defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

121.    As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

122.    Plaintiffs and the Estates of decedents and the heirs and next of kin of the decedents have sustained and are entitled to recover compensatory damages allowed under law, including damages for the value of decedents' life, loss of net earnings of the decedents, loss of probable support, future contributions and pecuniary benefits, loss of services, loss of inheritance of prospective accumulations, mental anguish, emotional pain and suffering, grief and sorrow, loss of society, companionship, comfort, protection, care, attention, advice, maintenance, counsel, guidance, and decedents' pre-death conscious pain, suffering and fear of death, loss of personal property, and funeral and burial expenses, and other damages.

- 31 -

XC-    007253

## COUNT TWO

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND, AND MASSPORT BASED ON NEGLIGENT SELECTION

123.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

124.    On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT had an independent and non-delegable duty to provide and maintain competent and careful security of their terminal operations area and aircraft. In recognition of that duty, THE AIRLINE DEFENDANTS THE NON-CARRYING AIRLINE DEFENDANTS PORTLAND AND MASSPORT subcontracted for security services to protect all flights departing from Portland Jetport and Logan Airport.

125.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing THE SECURITY COMPANY DEFENDANTS.

126.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT each had a duty or voluntarily undertook a duty through their contracts with THE SECURITY COMPANY DEFENDANTS to exercise the highest degree of care for the safety and security of all passengers and crew passing through security at Portland Jetport and Logan Airport.

127.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT each knew or should have known that

- 32 -

XC-    007254

the security screening systems and services at Portland Jetport and Logan Airport provided by THE SECURITY COMPANY DEFENDANTS were grossly inadequate and posed a severe danger to its aircraft, passengers, crew and the public. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT knew or should have known that the security systems at Portland Jetport and Logan Airport had been demonstrated to be like a sieve frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

128.    THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT knew or should have known that THE SECURITY COMPANY DEFENDANTS failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

129.    THE SECURITY COMPANY DEFENDANTS' work as security system contractors at Portland Jetport and Logan Airport presents a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

130.    THE SECURITY COMPANY DEFENDANTS had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

- 33 -

XC-    007255

131.   THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, PORTLAND and MASSPORT's failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers and crew passing through Portland Jetport and Logan Airport and boarding aircraft there.

132.   THE AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, PORTLAND and MASSPORT's failure to exercise reasonable care in the selection, continued retention and supervision of competent and careful security systems and contractors were proximate contributing factors to the causes of decedents injuries, death and damages.

133.   As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by plaintiffs and plaintiffs are entitled to recover such damages to the extent allowed under applicable state law.

### COUNT THREE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON STRICT TORT LIABILITY

134.   Plaintiffs incorporate by reference all prior allegations in this Complaint.

135.   The aforementioned aircraft was being used in an intended and foreseeable manner on the morning of September 11, 2001.

136.   Defendant BOEING defectively designed the cockpit or flight deck environment, including its door and accompanying locks of the subject aircraft. The

- 34 -

XC-    007256

design in use on September 11, 2001 in the subject aircraft was unreasonably

dangerous in that it could easily be penetrated by a determined passenger. The cockpit

door was not secure and the accompanying locks were insufficient to deter or prevent

unauthorized or unlawful entry to thwart a hijacking attack. Alternative and safer

designs were available for a nominal increase in cost which would have prevented

these terrorists from gaining access to the cockpit on Flight 11.

137.    This defective design permitted the terrorists to gain access to the cockpit

of Flight 11 and hijack the aircraft. BOEING'S defective design was a proximate cause

of the personal injuries to and death of decedents.

138.    As a direct and proximate result of the conduct of defendant BOEING,

BOEING is jointly and severally liable for damages sustained by plaintiffs and plaintiffs

are entitled to recover such damages to the extent allowed under applicable state law.

## COUNT FOUR

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN

139.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

140.    Defendant BOEING owed all passengers and crew who fly on their aircraft

and those persons on the ground or in buildings who might suffer injury or death as a

result of improper or unauthorized operation of a BOEING aircraft, including decedents,

a duty of care in safely designing the aircraft including a secure cockpit door and

accompanying locks.

- 35 -

XC-    007257

141.    Defendant BOEING recklessly and negligently breached this duty of care by failing to design the cockpit doors and accompanying locks to the subject aircraft in a manner which would prevent hijackers and/or other passengers from accessing the cockpit. The cockpit door on Flight 11 was not secure and the accompanying locks were insufficient to deter or prevent a hijacking.

142.    Defendant BOEING knew or should have known that the design of its cockpit door was defective. Defendant BOEING failed to remedy this defect. Defendant BOEING knew or should have known that alternative and safer designs were available for a nominal increase in cost which would have prevented these terrorists from entering the cockpit on Flight 11.

143.    This defective design permitted the terrorists to easily gain access to the Flight 11 cockpit on September 11, 2001 and was a proximate cause of the injuries to and deaths of decedents.

144.    As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by plaintiffs and plaintiffs are entitled to recover such damages to the extent allowed under applicable state law.

## COUNT FIVE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY

145.    Plaintiffs incorporate by reference all prior allegations in this Complaint.

146.    Prior to September 11, 2001, defendant BOEING expressly and/or impliedly warranted and represented that the subject aircraft and its component parts

- 36 -

XC-    007258

Exhibit 12

72QYWTCP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE: SEPTEMBER 11 LITIGATION

4                                          21 MC 97 (AKH)

5   IN RE:  SEPTEMBER 11 PROPERTY
    DAMAGE AND BUSINESS LOSS
6   LITIGATION

7   ------------------------------x

8

9

10

11                                  February 26, 2007
                                    10:20 a.m.
12

13

14

15  Before:

16          HON. ALVIN K. HELLERSTEIN

17                                    District Judge

18

19

20

21

22

23

24

25

72QYWTCP

1                           APPEARANCES

2   FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
    Attorneys for WTCP
3        One Liberty Plaza
         New York, New york
4   CATHI A. HESSION, ESQ.,
    RICHARD A. WILLIAMSON, ESQ.,
5   JASON T. COHEN, ESQ.,
         Of counsel
6

7   QUIRK AND BAKALOR, P.C.
    Attorneys  for United Airlines
8        845 Third Avenue
         New York, New York
9   JEFFREY J. ELLIE, ESQ.,
         Of counsel
10

11  CONDON & FORSYTH LLP
    Attorneys  for American Airlines
12       7 Times Square
         New York, New York
13  DESMOND T. BARRY, JR., ESQ.,
         Of counsel
14

15                                         - - -

16          THE COURT:  It seems to me that the question whether

17  or not the World Trade Center Properties parties were negligent

18  or not in the context of the security precautions they did or

19  did not take prior to and on 9/11 have nothing to do with

20  whether or not the aviation parties were negligent or not on or

21  about 9/11.  The loci of activity were different and there was

22  no interrelationship in terms of security arrangements between

23  one and the other of which I have been informed or of which I

24  know of.

25          I could have done this by simple endorsement.  I asked

72QYWTCP

1   security, should have been doing more than what we were doing,

2   isn't it relevant for impeachment purposes for us to be able to

3   say that the people that are suing us and saying we never

4   should have considered costs --

5           THE COURT:  I don't know that anyone can argue that

6   cost is not a factor.  Of course cost is a factor.  Not only

7   cost, but amount of people in line, the whole context of the

8   times.

9           I won't go into this because none of the plaintiffs

10  are here, but I think the context is in all in a decision on

11  reasonableness.  But what other parties did or did not do is

12  not relevant.

13          MR. ELLIS:  Your Honor, forget about the wrongful

14  death plaintiffs, we are just talking about the property damage

15  plaintiffs that are here --

16          THE COURT:  I would think that if Mr. Williamson says

17  cost has no bearing on whether you do not, I probably would

18  object.

19          MR. ELLIS:  Your Honor, if that issue comes before the

20  jury, is there any more powerful evidence to drive home the

21  point that cost is an issue --

22          THE COURT:  I made my ruling on that point.

23          MR. ELLIS:  Fine, your Honor.

24          THE COURT:  And Mr. Williamson knows now the ground of

25  the objection.

72QYWTCP

1          MR. BARRY:  One last point, your Honor.

2          THE COURT:  Yes, sir.

3          MR. BARRY:  Direct assessment of the threat.  Fourteen

4    years ago today the World Trade Center was bombed.  From 1993

5    until 2001 what did World Trade Center do to assess the threat

6    of --

7          THE COURT:  That is going to be an issue with regard

8    to people suing the World Trade Center, it's not an issue

9    between them and you or what people have to prove or not prove.

10          MR. BARRY:  What if I got an admission from them that

11   that was the government's responsibility, not our

12   responsibility?

13          THE COURT:  That is their contention.

14          MR. BARRY:  What?

15          THE COURT:  That's their contention.

16          MR. BARRY:  That's our contention, it's a government

17   responsibility.

18          THE COURT:  I have to deal with it in terms of each

19   parties' contentions.  But what some party did or did not do or

20   may or may not be negligent in relation to that is not relevant

21   to my judgment to the situation of another party.

22          MR. BARRY:  I understand that's your ruling, Judge,

23   but threat assessment, foreseeability, if they agree with us

24   that threat assessment of a terrorist Islamic attack is the

25   government's function, that goes to our defense and I think to