EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE SEPTEMBER 11, 2001 LITIGATION
------------------------------------------------------------x

CHRISTINE K. FISHER, Individually and as Personal
Representative of the Estate of GERALD P. FISHER,
Deceased, and on behalf of all survivors of
GERALD P. FISHER;

                                                  CASE NO.: 03 CV 6966
                                                  COMPLAINT – NUN PRO TUNC[1]

      Plaintiff

                                                  Date Filed: July __, 2007

v.

                                                  **PLAINTIFF**
                                                  **DEMANDS A**
                                                  **TRIAL BY JURY**

AMR CORPORATION;
AMERICAN AIRLINES, INC.;
ARGENBRIGHT SECURITY, INC.;
SECURICOR PLC;
METROPOLITAN WASHINGTON AIRPORTS AUTHORITY;
THE BOEING COMPANY;
AIRTRAN AIRWAYS, INC.;
ATLANTIC COAST AIRLINES;
CONTINENTAL AIRLINES, INC.;
DELTA AIRLINES, INC.;
NORTHWEST AIRLINES, INC.;
UNITED AIRLINES;
US AIRWAYS, INC.

      Defendants.
_____X

---

[1] Plaintiff, Christine Fisher Individually and as Personal Representative of the Estate of GERALD P. FISHER, Deceased, and on behalf of all survivors of GERALD P. FISHER, files this Second Amended and Segregated Complaint pursuant to directions Hon. Alvin K. Hellerstein asserted during the July 21, 2006 status conference in 21 MC 97 and in Judge Hellerstein's August 1, 2006 order, wherein the Court ordered all plaintiffs to assert separate actions, to be deemed filed *nunc pro tunc* as of September 10, 2003, the date of the original filing of the complaint collectively filed by, inter alia, Christine K. Fisher, Irene M. Golinski, Julia P. Shontere, and Shirley N. Willcher, Civil Case No. 2:03-cv-06966-AKH.

## SECOND AMENDED AND SEGREGATED COMPLAINT

## (GROUND VICTIM OF THE PENTAGON CRASH)

Plaintiff, CHRISTINE K. FISHER, Individually and as Personal Representative of the Estate of GERALD P. FISHER, Deceased, and on behalf of all survivors of GERALD P. FISHER, by her attorneys complaining of the Defendants herein, upon information and belief, respectfully states as and for their common liability allegations as follows:

## BACKGROUND

This action seeks damages on behalf of Plaintiff who suffered personal injuries and the heirs and next of kin of decedent, and the Estates of decedent for the wrongful death of Plaintiff who was killed as a result of the hijacking and crash of American Airlines Flight 77 (hereinafter "Flight 77") into the Pentagon in Arlington, Virginia on September 11, 2001. Flight 77 originated at Dulles International Airport, Virginia (hereinafter "Dulles Airport") and was bound for Los Angeles International Airport.

In sum, this action alleges that for several years prior to September 11, 2001, American Airlines and the other airline Defendants named herein, Argenbright and the other security company Defendant named herein, Boeing, and the Metropolitan Washington Airports Authority (hereinafter "MWAA") had actual knowledge of the fact that terrorist groups and individuals associated with them had publicly proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled within or to its borders and vowed to kill Americans and to destroy American institutions and that airlines and airports were a likely target of their violence. The risk of harm to airline passengers, crew and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized

operation of an aircraft was heightened by the fact that these Defendants had knowledge of dangerous long-standing flaws in airline and airport security, that commercial passenger aircraft were demonstrated to be vulnerable to attacks by persons intent upon causing death and injury in furtherance of their ideologies, and yet the Defendants failed to take reasonable action to protect passengers, crew and those on the ground or in buildings from harm in light of that knowledge and the risk presented.

These Defendants also knew or should have recognized what numerous evaluations disclosed; namely, that the airlines and airport security systems and those who implemented, operated and maintained them routinely failed to detect dangerous and deadly weapons capable of causing injury and death passing through so-called security checkpoints. These Defendants are jointly and severally liable for the wrongful deaths, injuries and damages resulting from the September 11 attacks because they were negligent, careless, wanton and reckless in failing to develop, implement, and maintain adequate airline and airport security systems at Dulles Airport, failed to implement reasonable and effective security measures prior to September 11, 2001 to deter and to prevent hijackers from carrying dangerous and deadly weapons aboard Flight 77 capable of causing injury and death, and failed to take the necessary measures to protect and secure the cockpit of Flight 77 from intrusion by terrorists who sought to gain control of the aircraft and cause it to crash.

Defendant Boeing, which is in the business of designing and manufacturing commercial air transport aircraft, was equally aware of the terrorist risks to civil aviation and failed to incorporate in its aircraft design structures and systems to prevent unauthorized and unlawful access to the cockpit of its aircraft.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over all Defendants pursuant to the "Air Transportation Safety and Systems Stabilization Act," Pub.L. 107-42, 115 Stat. 230 (the "Act"), Sections 408(b)(1) and (3), which establishes that "[t]he United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."[2]

2.      Jurisdiction is also based upon supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, with respect to any claims forming part of the same case or controversy.

3.      The claims set forth herein were initially presented to MWAA in writing.

4.      Plaintiff has otherwise performed all conditions precedent to the bringing of this action, or the same have been waived by Defendants.

## THE PARTIES-PLAINTIFF

5.      Plaintiff, CHRISTINE K. FISHER, being a resident citizen of the State of Maryland, is the surviving spouse of GERALD P. FISHER, deceased, and the Personal Representative of his Estate. As such, on her own behalf and on behalf of decedent's Estate and the distributees thereof, Plaintiff brings this action against the Defendants named herein for decedent's fatal injuries pursuant to the laws governing recovery of damages for wrongful death and for damages suffered by decedent's Estate.

---

[2]      Some actions may also be based upon diversity jurisdiction, 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.  The decedent GERALD P. FISHER was an occupant of the Pentagon on September 11, 2001 when Flight 77 crashed into it or thereafter while the risk of injury or death was still present.

7.  At the time of his September 11, 2001 death, decedent GERALD P. FISHER, was a resident citizen of the State of Maryland, and a consultant attending a meeting at the Pentagon.

## "AMERICAN AIRLINES"

8.  Defendant AMR Corporation (hereinafter "AMR") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

9.  Defendant AMR is engaged in the business of air transportation of passengers for hire.

10. Defendant American Airlines, Inc. (hereinafter "American") is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

11. Defendant American is a common carrier engaged in the business of transporting passengers by air and operates regularly scheduled flights from Dulles Airport and is responsible for the airline and airport security system at Dulles Airport.

12. Defendant AMR is the parent corporation of and exercised control over its wholly-owned subsidiary, Defendant American.

13. Defendant AMR, as the parent corporation of its wholly-owned subsidiary American, is liable for the negligent, reckless and wanton acts of American. (AMR and American are referred to collectively hereinafter as "American").

14. On September 11, 2001, American operated a Boeing 757-200 aircraft, registration No. N644AA ("the subject aircraft"), designated as Flight 77.

## "OTHER AIRLINE DEFENDANTS"

15. Defendant AirTran Airways, Inc., (hereinafter "AirTran") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Florida.

16. Defendant Atlantic Coast Airlines, (hereinafter "Atlantic Coast") is a corporation duly organized and existing under the laws of California and maintains its principal place of business in Virginia.

17. Defendant Continental Airlines, Inc., (hereinafter "Continental") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Texas.

18. Defendant Delta Air Lines, Inc., (hereinafter "Delta") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Georgia.

19. Defendant Northwest Airlines Inc., (hereinafter "Northwest") is a corporation duly organized and existing under the laws of Minnesota and maintains its principal place of business in Minnesota.

20. Defendant United Air Lines, Inc., (hereinafter "United") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.

21. Defendant US Airways, Inc., (hereinafter "US Airways") is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Virginia.

22. Defendants AirTran, Atlantic Coast, Continental, Delta, Northwest, United, and US Airways (collectively hereinafter "the Other Airline Defendants") are common carriers engaged in the business of transporting passengers by air and operate regularly scheduled flights from Dulles Airport.

### "THE SECURITY COMPANY DEFENDANTS"

23. Defendant Argenbright Security, Inc., (hereinafter "Argenbright") is a corporation duly organized and existing under the laws of Georgia and maintains its principal place of business in Georgia.

24. Defendant Securicor PLC, (hereinafter "Securicor") is a foreign corporation organized and existing under the laws of the United Kingdom.

25. Defendant Securicor is the parent corporation of and exercised control over its wholly-owned subsidiary, Defendant Argenbright.

26. Defendant Securicor, as the parent corporation of its wholly-owned subsidiary Argenbright, is liable for the negligent, reckless and wanton acts of Argenbright.

27. Argenbright and Securicor (hereinafter "the Security Company Defendants") were corporations engaged in the business of, and separately and collectively assumed responsibility for, implementing, developing, owning, operating, managing, maintaining and supervising airline and airport security for American for its flights departing from Dulles Airport, including Flight 77.

### "MWAA"

28. Defendant Metropolitan Washington Airports Authority is an entity duly organized and existing under the laws of the District of Columbia and Virginia and maintains its principal place of business in the District of Columbia.

29. On and prior to September 11, 2001, MWAA owned, operated, controlled, managed and maintained Dulles Airport and was responsible for airline and airport security for all flights departing from Dulles Airport.

### "THE BOEING DEFENDANT"

30. Defendant The Boeing Company (hereinafter "Boeing") was and is a corporation duly organized and existing under the laws of Delaware and maintains its principal place of business in Illinois.

31. Defendant Boeing is engaged in the business of designing and manufacturing aircraft to be used to transport passengers by common carriers such as American and others throughout the world.

32. Defendant Boeing designed and manufactured the subject aircraft, including the subject cockpit environment, including the cockpit door and locking mechanisms.

### GENERAL ALLEGATIONS

33. Prior to September 11, 2001, the Department of Transportation through its Federal Aviation Administration licensed American and the Other Airline Defendants as commercial air carriers authorized to transport passengers for hire, pursuant to which American and Other Airline Defendants had an obligation to comply with all federal statutes, rules, regulations, and environmental directives to achieve the highest level of airline and airport security to ensure that passengers, crew and those on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft were protected from harm as a result of a terrorist action.

34. On and prior to September 11, 2001, American, the Other Airline Defendants, MWAA, and the Security Company Defendants, through their agents, servants, officers,

employees, designees and/or contractors, jointly and severally undertook and were required to develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security system at Dulles Airport (including, but not limited to passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas and other security activities, ticketing purchase and check-in procedures and passenger identification and document checks for the subject aircraft and flight), to ensure the safety of persons traveling in air transportation and persons on the ground and in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by persons engaged in acts of criminal violence, air piracy or terrorist activity.

35. Prior to September 11, 2001, American, the Other Airline Defendants and MWAA entered into contractual relationships with the Security Company Defendants to provide security-screening services at Dulles Airport.

36. On and prior to September 11, 2001, American, the Other Airline Defendants, the Security Company Defendants, and MWAA, by their respective officers, agents, employees, servants and/or representatives, separately and collectively, selected, hired, trained, instructed and supervised the security checkpoint screeners, metal detectors and x-ray machine monitors and others who operated, maintained and controlled the security checkpoints at Dulles Airport.

37. Prior to September 11, 2001, regular meetings were held among American, the Other Airline Defendants, the Security Company Defendants, and MWAA during which airport security was discussed, and details about terrorist threats and potential security breaches were reviewed and discussed.

38. On and prior to September 11, 2001, all Defendants, their agents, associates, and partners, and each of them, were the agent, servant, employee, assignee, successor in interest, or joint venturer of each other and were acting within the purpose or scope of such agency or employment; and all acts or omissions alleged herein of each Defendant were authorized, adopted, approved, or ratified by each of the other Defendants.

39. All Defendants, and each of them, were fully informed of the actions of their agents and employees, and no officer, director, or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and then all Defendants, and each of them, thereby ratified those actions.

40. Prior to September 11, 2001, American, the Other Airline Defendants, the Security Company Defendants, and MWAA knew of the grave risk of attacks upon civil aviation generally, and commercial aircraft and airports. The Department of Transportation Inspector General, Federal Aviation Administration, Government Accounting Office and other independent and industry auditors repeatedly published information concerning terrorist threats to civil aviation. For example, in its 1999 annual report, *Criminal Acts Against Civil Aviation* (hereinafter "The 1999 Report"), the FAA's Office of Civil Aviation Security advised of potential dangers, including the identification of international terrorist Osama Bin Laden as a specific threat to hijack an airliner and target the United States:

> "Another threat to civil aviation is from Saudi terrorist financier Usama Bin Ladin....In a May, 1998 interview, Bin Ladin implied that he could use a shoulder-fired surface-to-air missile to shoot down a military passenger aircraft transporting U.S. military personnel. He reiterated that his attacks would not distinguish between U.S. civilians and military personnel. Moreover, an exiled Islamic leader in the United Kingdom proclaimed in August 1998 that Bin Ladin would 'bring down an airliner, or hijack an airliner to humiliate the United States.'"