> "Another threat to civil aviation is from Saudi terrorist financier Usama Bin Ladin....In a May, 1998 interview, Bin Ladin implied that he could use a shoulder-fired surface-to-air missile to shoot down a military passenger aircraft transporting U.S. military personnel. He reiterated that his attacks would not distinguish between U.S. civilians and military personnel. Moreover, an exiled Islamic leader in the United Kingdom proclaimed in August 1998 that Bin Ladin would 'bring down an airliner, or hijack an airliner to humiliate the United States.'"

The 1999 Report at 59.

The report also points to the 1994 Ramzi Yousef conspiracy to place explosive devices on as many as twelve U.S. airliners flying out of the Far East as further evidence of the desire and intent to attack U.S. commercial aircraft. Id.

In addition, threats that aircraft would be used as missiles and crashed into American institutions were passed on to the FAA and American, the Other Airline Defendants, and other commercial carriers:

> In January, 1995, a Philippine National Police raid turned up materials in a Manilla apartment indicating that three individuals – Ramzi Yousef, Abdul Murad and Khalid Shaykh Mohammed – planned, among other things, to crash an airplane into CIA headquarters....Information on the threat was passed to the FAA, which briefed U.S. and major foreign carriers.
>
> Joint Inquiry Staff Statement, Part I, Eleanor Hill, Staff Director, Joint Inquiry Staff, September 18, 2002, at p. 26.

In the 1999 Report, the FAA issued the following warning:

> "There is every reason to believe that civil aviation will continue to be an attractive target for terrorist groups....Increased awareness and vigilance are necessary to deter future incidents – be they from terrorists like Ramzi Yousef or non-terrorists bent on suicide, as occurred in Brazil in 1997. It is important to do the utmost to prevent such acts rather than to lower security measures by interpreting the statistics [which showed a decrease in incident between 1993 and 1998] as an indication of a decreased threat."

11

The 1999 Report at p. 59-60.

41.     Prior to September 11, 2001, the Defendants knew or should have known about documented and reported numerous security breaches involving unauthorized access to secure areas (including ramps and aircraft) and warnings that security was at risk and that passenger and carry-on baggage screening systems were vulnerable; those reports detailed dangerous, long-standing flaws and deficiencies in airport security and security devices and warned the Defendants that their airline and airport security systems and devices were unsafe and needed significant improvements in staffing, training and equipment in order to ensure the safety of persons traveling in air transportation and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by persons engaged in acts of criminal violence, hijacking, terrorist activity, and air piracy.

42.     On and prior to September 11, 2001, American, the Other Airline Defendants, and MWAA knew or should have known that evaluations of the airline and airport security systems as they existed on September 11, 2001 revealed that said systems constituted a grave security risk; that the Security Company Defendants provided screening services which were inadequate and that such inadequacies posed severe dangers to its passengers, crew and persons on the ground or in buildings that the Security Company Defendants failed to adequately train its employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations.

43.     On September 11, 2001, five hijackers passed through the airline and airport security system at Dulles Airport, boarded Flight 77 and carried or obtained dangerous

weapons capable of causing injury or death, including, but not limited to, box cutters, knives and/or razors.

44. On September 11, 2001 at approximately 8:20 a.m., Flight 77 departed Dulles Airport with fifty-eight passengers, including the five hijackers, and six crewmembers.

45. At some time after take-off and upon information and belief, five terrorists on board hijacked and commandeered the subject aircraft with the aid of dangerous and deadly weapons capable of causing injury or death, including, but not limited to, box cutters, knives and/or razors.

46. Upon information and belief, the five individuals who hijacked Flight 77 have been identified as Khalid Al-Midhar, Majed Moqed, Nawaq Alhamzi, Salem Alhamzi, and Hani Hanjour (collectively referred to as the "hijackers") and were associated with or members of the Al Qaeda terror network led by Osama Bin Laden.

47. At approximately 9:40 a.m., after the hijackers gained control, the subject aircraft crashed into the Pentagon killing all persons on board the subject aircraft, including decedents.

48. As a result of the actions of the Defendants and the hijackers, Plaintiff and decedents were subjected to physical personal injuries, as well as pre-death pain and suffering, extreme emotional distress, extreme terror, and unremitting fear of impending death, as the case may be.

49. As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under the applicable law.

## COUNT ONE

## CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN, THE SECURITY COMPANY DEFENDANTS, AND MWAA, BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS CONDUCT AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

50.     Plaintiff incorporates by reference all prior allegations in this Complaint.

51.     On and prior to September 11, 2001, American, the Security Company Defendants and MWAA, by their officers, agents, employees, servants or representatives, had an independent, joint and several, non-delegable duty to exercise and provide those on the ground or in buildings who might suffer death or injury as a result of improper or unauthorized operation of the aircraft with the highest level of security and care to safeguard Flight 77 and all other aircraft that operated at Dulles Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard aircraft or otherwise threaten the safety of passengers, crew or others on the ground or in buildings.

52.     The Defendants were jointly and severally required to secure Flight 77 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, and to operate the subject aircraft in a manner which would not result in injury or death to its passengers, crew or others on the ground or in buildings.

53.     On and prior to September 11, 2001, American, and MWAA entered into contracts with the Security Company Defendants for security services for all flights departing from Dulles Airport. These Defendants had a duty to exercise the highest degree of care for the safety and security of all passengers and crew passing through security checkpoints at Dulles Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with the Security Company Defendants to provide various airline and

14

airport security services so as to secure from harm all passengers, crew and those persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

54. By virtue of their negligence, the Security Company Defendants breached their contracts to provide effective security at Dulles Airport and to prevent security breaches which could cause injury or death to passengers, crew and persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

55. On and prior to September 11, 2001, American, the Security Company Defendants, and MWAA, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard of the rights and safety of the passengers, crew and others on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to Flight 77 passengers and crew in that American, the Security Company Defendants, and MWAA:

> failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers, crew and others on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence, air piracy and terrorist activity;
>
> failed to adequately train, staff and equip Dulles Airport's airline and airport security system;
>
> failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

failed to properly scrutinize the hijackers' tickets and identification documents;

failed to properly monitor security checkpoints, x-ray machines and metal detectors;

failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

failed to prevent the hijackers from entering the unprotected cockpit;

failed to implement adequate safety and security measures to prevent hijacking;

failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

Defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for the rights and safety of others.

56. As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

16

57. As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

58. As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

59. As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT TWO

### CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE OTHER AIRLINE DEFENDANTS BASED ON NEGLIGENCE

60. Plaintiff incorporates by reference all prior allegations in this Complaint.

61. On and prior to September 11, 2001, the Other Airline Defendants had an independent and non-delegable duty to maintain the security of their aircraft at Dulles Airport. In recognition of that duty, the Other Airline Defendants subcontracted for security services to protect all flights departing from Dulles Airport.

62. The Other Airline Defendants each had a duty or voluntarily undertook a duty through contracts with the Security Company Defendants to exercise the highest degree of care

17

for the safety and security of all persons on the ground and in buildings who might suffer injury or death as a result of improper or unauthorized operation of Flight 77 and all other aircraft that operated at Dulles Airport.

63. The Other Airline Defendants each knew or should have known that the security screening systems and services at Dulles Airport provided by the Security Company Defendants were grossly inadequate and posed a severe danger to their passengers, crew and other persons on the ground or in buildings. The Other Airline Defendants knew or should have known that the security systems at Dulles Airport had been demonstrated to be like a sieve, frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

64. Each of the Other Airline Defendants knew or should have known that the Security Company Defendants failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

65. The Other Airline Defendants' failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers and crew passing through Dulles Airport and boarding aircraft there as well as to persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft.

66. The Other Airline Defendants' conduct was a proximate contributing factor to the cause of the Plaintiff's injuries, losses and damages.

67. As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedent was forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

68. As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income, support, society, love, grief, consortium, services, guidance, care, comfort, companionship and inheritance of the decedent, suffered mental anguish and mental pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of decedent's death, including, but not limited to, funeral and burial costs, and were otherwise damaged.

69. As a direct and proximate result of the foregoing, the Plaintiff's decedent was caused to sustain severe and serious permanent injuries, grievous pain, agony and mental anguish, all prior to decedent's death, with no negligence on the part of the Plaintiff contributing thereto.

70. As a direct and proximate result of the conduct of all Defendants, the Defendants are jointly and severally liable for damages sustained by Plaintiff and Plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT THREE

### CLAIMS FOR PERSONAL INJURY, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN AND MWAA BASED ON NEGLIGENT SELECTION

71. Plaintiff incorporates by reference all prior allegations in this Complaint.

19

72.  American and MWAA failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing the Security Company Defendants.

73.  The Security Company Defendants' work as security systems contractors at Dulles Airport presented a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

74.  American and MWAA have a non-delegable duty to its passengers, its crewmembers, and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft, including decedents, to provide competent and careful scrutiny of their terminal operations area and aircraft.

75.  The Security Company Defendants had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

76.  American and MWAA's conduct was a proximate contributing factor to the cause of the decedent's and Plaintiff's injuries and damages.

77.  As a result of the foregoing, the injured Plaintiff suffered severe, serious and permanent personal injuries, mental anguish, pain and suffering, and was caused to incur necessary and reasonable expenses, loss of income, loss of consortium and other damages and the decedents were forced to endure severe mental anguish, fear of impending death, and untimely suffered severe physical injuries which caused his death.

78.  As a direct and proximate result of the foregoing, the heirs and distributees of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of income,